Maura C. Fahey, OSB No. 133549
maura@crag.org - (503) 525-2722
Christopher G. Winter, OSB No. 984355
chris@crag.org - (503) 525-2725
Crag Law Center
917 SW Oak Street, Suite 417
Portland, OR 97205
Fax: (503) 296-5454

*Attorneys for Plaintiff Rogue Advocates*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **ROGUE ADVOCATES,** an Oregon nonprofit membership corporation,<br><br>              Plaintiff,<br><br>     v.<br><br>**MOUNTAIN VIEW PAVING, INC,** an Oregon corporation,<br><br>              Defendant. | **Case No.:** 1:15-cv-1854<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Pursuant to Clean Air Act, 42 U.S.C. § 7604(a))** |

## INTRODUCTION

1.      This is a complaint for injunctive and declaratory relief and civil penalties under the citizen suit provision of the federal Clean Air Act, 42 U.S.C. § 7604.  Plaintiff Rogue Advocates brings this civil action pursuant to the Clean Air Act, 42 U.S.C. § 7604(a)(1)(A), against Mountain View Paving, Inc ("Mountain View Paving" or "Defendant"), for past and

**COMPLAINT** - 1

continuing violations of the Clean Air Act and the General Air Containment Discharge Permit,

AQGP-007 ("Permit") issued by the Oregon Department of Environmental Quality ("DEQ").

2.      Defendant owns and operates an asphalt batching plant ("the plant") and paving

business.  Defendant's operation of the plant is subject to the limitations and conditions of the

AQGP-007 Permit, most recently issued by Oregon DEQ on October 17, 2007.  Defendants have

violated and continue to violate the terms of the Permit in violation of the Clean Air Act, 42

U.S.C. §§ 7401 *et seq.*

## JURISDICTION

3.      Rogue Advocates' claims arise under the Clean Air Act, 42 U.S.C. §§ 7401 *et*

*seq.*  Jurisdiction over this action is conferred by 28 U.S.C. § 1331, because the claims present a

federal question, and 42 U.S.C. § 7604, which creates jurisdiction over citizen enforcement of

the Clean Air Act.  A present, actual, and justiciable controversy exists between the parties.  The

requested relief is proper under 28 U.S.C. §§ 2201 (declaratory relief) and 2202 (injunctive

relief), and 42 U.S.C. § 7604(a) (civil penalties).

4.      As required by 42 U.S.C. § 7604(b)(1)(A), on February 18, 2015, Rogue

Advocates sent Defendant a sixty-day notice of intent to sue for violations of the AQGP-007

Permit.  *See* Exhibit A ("Notice Letter").  As required by 40 C.F.R. § 54.2, Rogue Advocates

also sent copies of the Notice Letter to officers of the Oregon DEQ, the Administrator of the

United States Environmental Protection Agency ("EPA"), Gina McCarthy, and the EPA Region

10 Administrator's Office.  More than sixty days have elapsed since Rogue Advocates properly

served the Notice Letter on Defendant.

**COMPLAINT** - 2

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97214*
*Tel. (503) 525-2722*

5.      Pursuant to 42 U.S.C. § 7604(b)(1)(B), this court has jurisdiction as neither

Oregon DEQ nor EPA has commenced and is diligently prosecuting a civil action against

Defendant to require compliance with the Permit and the Clean Air Act.

**VENUE**

6.      Venue is proper in this Court pursuant to 42 U.S.C. § 7604(c)(1) because the

events giving rise to these claims occurred at Defendant's plant located in Talent, Oregon, which

is within this judicial district.

**PARTIES**

7.      Plaintiff ROGUE ADVOCATES is an Oregon nonprofit membership corporation

with its principal place of business in Williams, Oregon.  Rogue Advocates' mission is to

cultivate livable and sustainable communities in Southern Oregon's Rogue Valley region

through advocacy, education and outreach around local land use issues.  This includes the

community in Talent, Oregon surrounding Defendant's asphalt batching operations.

8.      Rogue Advocates has members who live, work, and recreate near Defendant's

property and asphalt batch plant operation.  Specifically, Rogue Advocates has members who

live in the Mountain View Estates community located just west of and adjacent to Defendant's

plant.  Additionally, Rogue Advocates' members use and enjoy Bear Creek and the Bear Creek

Greenway path that runs alongside Defendant's property to the west for recreational and

aesthetic purposes including walking, fishing, biking, and other purposes, and those members

intend to continue doing so on a regular basis in the future.

9.      Defendant's batch plant operation emits smoke, dust, and fumes into the

surrounding area, including the nearby Mountain View Estates community.  Additionally,

**COMPLAINT - 3**

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97214*
*Tel. (503) 525-2722*

Defendant stores equipment, vehicles, material stockpiles and other structures within the floodplain and floodway of Bear Creek, a tributary to the Rogue River.  Defendant's operations degrade or threaten to degrade Rogue Advocates' members' use and enjoyment of their personal property, the Bear Creek Greenway and the adjacent Lyn Newbry Park because Defendant's activities adversely affect air quality, livability, and aesthetic enjoyment of the area.  Defendant's operations are also accompanied by the risk of fire and explosion adjacent to the residential community of Mountain View Estates.

10.     The air quality and livability of the Talent, Oregon community, and the Mountain View Estates neighborhood specifically, directly affects the health, recreational, aesthetic and environmental interests of Rogue Advocates' members.  The interests of Rogue Advocates' members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Air Act and the Permit unless this Court grants the requested relief. The requested relief would redress these injuries.

11.     Defendant MOUNTAIN VIEW PAVING, INC. is an Oregon company with its principle place of business at 530 West Valley View Road, Talent, Oregon, 97540, property map: Township 38 South, Range 1W, Section 24, Tax Lot 600.  It owns and operates the asphalt batch plant and paving business located at the same address.

## LEGAL BACKGROUND

12.     DEQ most recently re-issued the AQGP-007 General Air Contaminant Discharge Permit on October 17, 2007.  *See* Exhibit B.  DEQ granted Mountain View Paving coverage under the Permit on March 11, 2008; DEQ's permit file number for the plant is 37-0522.  The

**COMPLAINT - 4**

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97214*
*Tel. (503) 525-2722*

Permit allows Defendant to discharge air contaminants from processes and activities related to hot-mix asphalt pavement production.

13.     The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).  The Clean Air Act provides for both federal and state roles in ensuring the goals of the Act are met with those roles reflected in section 110.  42 U.S.C. § 7410.  Section 110 imposes both an obligation and authority on states to develop air pollution control strategies for stationary sources within their boundaries.  42 U.S.C. § 7410.  A critical mechanism for ensuring that states implement Clean Air Act requirements is the required adoption of State Implementation Plans ("SIPs"), which "provide[] for implementation, maintenance, and enforcement" of primary and secondary ambient air quality standards applicable within a state or air quality region within a state.  42 U.S.C. § 7410(a)(1).

14.     Once the EPA approves a SIP provision, the terms of that provision are binding on the state, regulatory agencies, and covered industries as a matter of federal law.  42 U.S.C. § 7413(a)(2).  On May 31, 1972, the EPA approved initial SIPs for a number of states, including Oregon.  37 Fed. Reg. 10842 (May 31, 1972).  Oregon's SIP provisions are part of the Oregon statutes and administrative rules.

15.     Oregon Administrative Rule ("OAR") 340-216-0020(3) provides that "[n]o person may construct, install, establish, develop or operate any air contaminant source listed in OAR 340-216-8010 without first obtaining an Air Contaminant Discharge Permit ("ACDP") from DEQ."  Oregon's SIP defines "source" based upon applicable Standard Industrial Classification ("SIC") codes and supporting activities.  OAR 340-200-0020(136) (defining

**COMPLAINT - 5**

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97214*
*Tel. (503) 525-2722*

source as, *inter alia*, a "facility" . . . that emits or is capable of emitting air contaminants to the atmosphere" and it "includes all pollutant emitting activities that belong to a single major industrial group as described in the Standard Industrial Classification Manual . . . or that support the major industrial group."). Air contaminant is defined broadly to include dust, fume, gas, mist, odor, smoke, vapor, pollen, soot, carbon, acid or particulate matter, or any combination thereof. OAR 340-200-0020(8).

16.     Mountain View Paving's asphalt batch plant operation constitutes an air contaminant "source" under Oregon's SIP and the Clean Air Act.

17.     Mountain View Paving is assigned coverage under the current version of the General Air Containment Discharge Permit, AQGP-007, for SIC Code 2951 – Asphaltic Concrete Paving Plants.

18.     Emissions standards and other limitations contained within an Air Containment Discharge Permit are applicable requirements of Oregon's SIP and the Clean Air Act. 40 C.F.R. § 52.1988.

19.     Condition 1.4 of the AQGP-007 Permit provides, "[t]his permit is not valid . . . at any location where the operation of the permittee's processes, activities, and insignificant activities would be in violation of any local land use or zoning laws." Exhibit B at 2.

20.     The local land use and zoning laws that govern Defendant's asphalt plant are found in the Jackson County Land Development Ordinance ("LDO"). *See* Exhibit C. LDO Chapter 3.1.1(A) provides, "[b]efore establishing any land use regulated by this Ordinance…an application for a Land Use Permit will be filed with the Department. * * * All uses, regardless of

**COMPLAINT - 6**

permit type, will comply with any applicable standards set forth in Chapters 4 through 8, and

with the general development standards set forth in Chapter 9."  Exhibit C at 2.

21.    The Jackson County LDO further provides that it is a violation of county law to:

B)    Use land, construct, occupy, or place improvements . . . or conduct any
activity on land, in any manner not in accordance with the standards set
forth in this Ordinance, or with any special permit or order of the
Development Services Department, Hearings Officer, Planning
Commission, or Board of Commissioners issued hereunder.

C)    Conduct, without a permit, any activity for which a permit is required by
this Ordinance.

LDO Chapter 1.8.1.  Exhibit C at 1.

22.    Any person may commence a civil action against any person who is alleged to

have violated or to be in violation of an "emission standard or limitation."  42 U.S.C. §

7604(a)(1)(A).

23.    "Emission standard or limitation" is defined, in relevant part, as "any other

standard, limitation or schedule established under any permit issued . . . under any applicable

State implementation plan approved by the Administrator, any permit term or condition, and any

requirement to obtain a permit as a condition of operations."  42 U.S.C. § 7604(f)(4).

24.    Violations of SIP requirements and of the requirements of permits issues under

SIPs are thus violations of the Clean Air Act subject to enforcement in a Clean Air Act citizen

suit.

25.    The Clean Air Act provides for civil penalties of up to $37,500 per violation per

day for violations occurring after January 12, 2009.  *See* 42 U.S.C. §§ 7413(b), 7413(e), and

7604(a); 40 C.F.R. §§ 19.2 and 19.4.

**COMPLAINT - 7**

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97214*
*Tel. (503) 525-2722*

## FACTUAL BACKGROUND AND DEFENDANT'S FAILURE TO OBTAIN LAND USE APPROVAL FOR ASPHALT BATCH PLANT

26.     Defendant has operated its asphalt batch plant on the subject property since 2001. The subject property is zoned for rural residential development (RR-5 zone).  Asphalt batch plants are not an allowed use within the RR-5 zone.  *See* LDO 5.3.2; LDO Table 6.2-1 (Exhibit C at 6-7, 8-9).

27.     Defendant does not hold, nor has it ever held, any special permit or order authorizing its operation of an industrial use in a residential zone.  *See* LDO 1.8.1(B).

28.     Since 2011, Defendant has submitted multiple applications with Jackson County seeking land use approval to operate its asphalt batch plant in a residential zone.  Each of those applications has been denied, most recently on September 24, 2015 on the basis that the asphalt batch plant operation poses adverse impacts to the surrounding community.

29.     Jackson County LDO Chapter 7 provides that "[a] Floodplain Development Permit will be required prior to initiating development activities in any Area of Special Flood Hazard…" where the "Area of Special Flood Hazard" includes the mapped floodplain and floodway.  LDO 7.2.2(C) (Exhibit C at 13).  LDO 7.2.15 provides, in part, "[n]o structure or land will hereafter be located, extended, converted or altered unless in full compliance with the terms of Section 7.2 and other applicable regulations."  Exhibit C at 16.

30.     The subject property and Defendant's asphalt batch plant operation are located adjacent to Bear Creek to the west, a tributary of the Rogue River.  The entire property is located within the mapped flood hazard overlay of Bear Creek.  *See* LDO 7.2 (Exhibit C at 10–16).  A substantial portion of the property is located within the regulatory floodway of Bear Creek, with the remainder of the property located within the 100-year floodplain.

**COMPLAINT - 8**

31.     Defendant does not hold a Floodplain Development Permit for its asphalt batching operations within the Area of Special Flood Hazard of Bear Creek.

32.     Defendant has been in violation of Condition 1.4 of the Permit and the Clean Air Act since at least February 2010.  Without the required land use approvals for the subject property, Defendant's Clean Air Act permit is not valid.  *See* Exhibit B at 2.  Each day that Defendant continues to operate without the required land use and zoning approvals for the subject property constitutes a separate violation of the Permit and the Clean Air Act.

33.     On January 30, 2015, Oregon DEQ sent Defendant a Warning Letter notifying Defendant that it was in violation of Condition 1.4 of the Permit.  Since that time, DEQ has not taken any action to enforce the terms of the Permit or the Clean Air Act against Defendant's violations.

34.     The continuous nature of Defendant's failure to secure land use approval or to cease its operations in violation of the Clean Air Act demonstrates at least a reasonable likelihood of continued violations in the future.  Defendant has violated and continues to violate the requirements of the AQGP-007 Permit and the Clean Air Act.

## CLAIM FOR RELIEF

35.     Plaintiff re-alleges and incorporates by reference every allegation made in paragraphs 1 through 34 above.

36.     Operating any air contaminant source in violation of any permit limitation or condition or any requirement of a State Implementation Plan constitutes a violation of the Clean Air Act.  *See* 42 U.S.C. §§ 7604(a)(1)(A), 7604(f)(4); 40 C.F.R. § 52.1988; OAR 340-216-0020(3).

**COMPLAINT** - 9

37.     On each day of operation since at least 2010, Defendant has been in violation of Condition 1.4 of the AQGP-007 Permit, Oregon's SIP, and the Clean Air Act for operating in violation of local land use and zoning laws.

38.     In the alternative, on each day of operation since at least 2010, Defendant has been in violation of the Clean Air Act for operating without a valid permit.

39.     Defendant's violations are reasonably likely to continue in the future in the absence of the requested relief.

## REQUEST FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.      Declare that Defendant's operations without required land use approval constitutes a violation of the AQGP-007 Permit and the Clean Air Act;

B.      Declare that Defendant has violated the Clean Air Act by failing to comply with Condition 1.4 of the AQGP-007 Permit and Oregon's SIP;

C.      Temporarily and permanently enjoin Defendant from discharging air contaminants from its asphalt batch plant operation until obtaining land use approvals as required by the limitations and conditions of the applicable AQGP-007 Permit;

D.      Assess civil penalties of up to $37,500 per day of violation against Defendant for each violation of the Clean Air Act pursuant to 42 U.S.C. § 7413(b), adjusted by 40 C.F.R. §§ 19.2, 19.4;

E.      Award Plaintiff its costs and expenses, including reasonable attorneys fees, incurred in bringing this action; and

**COMPLAINT** - 10

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97214*
*Tel. (503) 525-2722*

F.      Such other relief as the Court may deem just and proper.


DATED this 30th day of September, 2015.

                                    Respectfully submitted,

                                    _s/ Maura C. Fahey_____
                                    Maura C. Fahey, OSB # 133549
                                    maura@crag.org
                                    Christopher G. Winter, OSB # 984355
                                    chris@crag.org
                                    Crag Law Center
                                    917 SW Oak St., Suite 417
                                    Portland, Oregon 97205
                                    (503) 525-2722
                                    Fax (503) 296-5454


                                    *Attorneys for Plaintiffs*


**COMPLAINT** - 11