IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **ROGUE ADVOCATES**, an Oregon non-Profit membership corporation, | Case No. 1:15-cv-01854-CL |
| Plaintiff, | **ORDER** |
| v. | |
| **MOUNTAIN VIEW PAVING, INC.**, an Oregon corporation, | |
| Defendant. | |

CLARKE, Magistrate Judge.

Defendant Mountain View Paving, Inc. ("Defendant") is an asphalt batching plant and paving business located in Talent, Oregon. Plaintiff Rogue Advocates ("Plaintiff") is a non-profit with members who live, work, and spend time near Defendant's operation. On September 30, 2015, Plaintiff filed the present citizen suit against Defendant alleging that it is operating in violation of the Clean Air Act (the "CAA"). On October 21, 2015, Plaintiff filed a Motion for Preliminary Injunction (#6) prohibiting Defendant from operating at its current location. The Court has postponed briefing deadlines for Plaintiff's motion in order to address the threshold

Page 1 – ORDER

issue of jurisdiction. Defendant moves the Court to dismiss Plaintiff's case for lack of subject-matter jurisdiction or, alternatively, to abstain in deference to state proceedings. Because Plaintiff's claim falls within the Court's jurisdiction and abstention is not necessary, Defendant's motion (#25) is DENIED.

## BACKGROUND

Defendant qualifies as an air contaminant "source" under the CAA. Compl. ¶ 16. It operates under a General Air Contaminant Discharge Permit issued by the Oregon Department of Environmental Quality ("DEQ"). Compl. ¶ 17. The standards and limitations set forth in Defendant's permit are enforceable requirements of the CAA. 40 C.F.R. § 52.1988. Violations of the permit's terms are considered violations of the CAA itself, and are subject to enforcement under the federal statute's citizen suit provision. Compl. ¶ 24.

Condition 1.4 of Defendant's CAA permit provides:

> This permit is not valid ... at any location where the operation of the permitee's processes, activities, and insignificant activities would be in violation of any local land use or zoning laws. ... It is the permitee's sole responsibility to obtain local land use approvals as, or where, applicable before operating this facility at any location.

Compl. Ex. B, at 2. The local land use laws applicable to Defendant — and thus incorporated into its CAA permit through condition 1.4 — are found in the Jackson County Land Development Ordinance ("LDO"). Compl. ¶ 20. The LDO provides that it is a violation of local law to "[u]se land ... or conduct any activity on land, in any manner not in accordance with the standards set forth in [the LDO]" or to "[c]onduct, without a permit, any activity for which a permit is required by [the LDO]." LDO 1.8.1.

Defendant has operated its asphalt batch plant at 530 West Valley View Road, Talent, Oregon 97540 since 2001. Compl. ¶¶ 11, 26. The subject property is zoned for rural residential

development; industrial uses, like asphalt batch plants, are not allowed. Compl. ¶ 26. Defendant has not acquired special authorization to operate in the residential zone. Compl. ¶ 27. The property is also located within the floodplain of a tributary to the Rogue River, Bear Creek. Compl. ¶ 30. Defendant does not have a Floodplain Development Permit. Compl. ¶ 31. Because Defendant does not have authorization to operate in a residential zone or floodplain, Plaintiff asserts it is violating local land use law and condition 1.4 of its CAA permit.

Since 2011, Defendant has submitted multiple applications to Jackson County for approval of its operation within a residential zone. Compl. ¶ 28. None of those applications have been approved. Compl. ¶ 28. Most recently, on September 24, 2015, the County's Hearing Officer denied Defendant's application to be considered a lawful alteration of a preceding non-conforming concrete batch plant use.[1] Rothermich Decl. Ex. J, at 41-42. On October 13, 2015, Defendant appealed to Oregon's Land Use Board of Appeals ("LUBA"). Rothermich Decl. Ex. K. On Defendant's motion, LUBA stayed enforcement of the Hearing Officer's denial for the pendency of the appeal on the grounds that Defendant had established a colorable claim of error and shown that it would suffer irreparable injury if the stay was not granted. Rothermich Decl. Ex. L, at 14. LUBA has not yet ruled on the matter. Defendant cannot apply for a floodplain permit until and unless it acquires approval of its nonconforming industrial use. Rothermich Decl. Ex. F, at 9.

## LEGAL STANDARD

Where the Court lacks subject-matter jurisdiction, the action must be dismissed. FED. R. CIV. P. 12(b)(1). "[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."

---

[1] The at-issue property has been used for batching operations since 1963. Rothermich Decl. Ex. B, at 21.

Page 3 – ORDER

*McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); FED. R. CIV. P. 12(d). The plaintiff bears the burden of proving the Court has subject matter jurisdiction. *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992).

## DISCUSSION

Plaintiff alleges that Defendant has violated and is currently violating its CAA permit by operating without required local land use approvals. Defendant requests dismissal of this case on four separate grounds. It asserts that this Court lacks subject-matter jurisdiction and, alternatively, invokes the doctrines of ripeness, *Burford* abstention, and *Colorado River* abstention. At the heart of Defendant's motion is the concern that this Court would preempt land use proceedings pending before LUBA if it proceeded forward with Plaintiff's CAA action.

### I. The Court has Jurisdiction over Plaintiff's CAA Citizen Enforcement Action.

Plaintiff brings this suit pursuant to the CAA's citizen suit provision, which allows "any person" to "commence a civil action on his own behalf ... against any person ... who is alleged to have violated ... or to be in violation of ... an emission standard or limitation[.]" 42 U.S.C. § 7604(a)(1). "Emission standard or limitation" is defined broadly to include "any other standard, limitation, or schedule established under any permit issued ... under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f)(4). Plaintiff's complaint fits squarely within this definition. It claims that Defendant is operating in violation of a permit condition.

There is no dispute that Plaintiff satisfied the two statutory prerequisites for a citizen suit. First, the CAA requires a citizen to give notice of a violation to the Environmental Protection Agency ("EPA"), DEQ, and the alleged violator at least 60 days prior to filing suit. 42 U.S.C. §

7604(b)(1)(A); *Ctr. for Biological Diversity v. Marina Point Dev. Co.,* 566 F.3d 794, 800 (9th Cir. 2009) (describing the Clean Water Act's similar notice provision as "a jurisdictional necessity."). Plaintiff notified Defendant of its intent to sue more than seven months before commencing this action. Compl. Ex. A. Second, a citizen suit is not permitted "if the Administrator or State has commenced and is diligently prosecuting a civil action ... to require compliance with the standard, limitation, or order[.]" 42 U.S.C. § 7604(b)(1)(B); *see also Ctr. for Biological Diversity,* 566 F.3d at 800 (explaining that citizen suits are only proper if federal, state, and local agencies fail to enforce). Neither EPA nor the DEQ is prosecuting Defendant.

Because Plaintiff's allegations fit within 42 U.S.C. § 7604(a)(1) and Plaintiff has met the two preconditions to suit, the CAA expressly confers jurisdiction to this Court. 42 U.S.C. § 7604(a) ("The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation ...."). Nevertheless, Defendant asserts dismissal is appropriate because this action turns on a local land use decision over which LUBA has exclusive jurisdiction. Or. Rev. Stat. § 197.825(1)("[T]he Land Use Board of Appeals shall have exclusive jurisdiction to review any land use decision or limited land use decision of a local government, special district or a state agency in the manner provided in ORS 197.830 to 197.845."). Defendant argues that Plaintiff is attempting to unlawfully short-circuit state processes by bringing the present federal action.

The Court disagrees with Defendant's analysis. First, this Court's jurisdiction is not invalidated because Plaintiff's CAA claim implicates state and local law. Indeed, the CAA encourages this overlap. 42 U.S.C. § 7402(a) (explicitly requiring the federal government to facilitate "cooperative activities by the States and local governments for the prevention and control of air pollution[.]"). It "creates a partnership between the federal government and the

states to combat air pollution." *California Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 502 (9th Cir. 2015), *cert. denied*, No. 15-123, 2015 WL 4554965 (U.S. Nov. 2, 2015). While EPA prescribes national ambient air quality standards, the states are responsible for implementing them. *Id.* Each state must adopt a state implementation plan (SIP) that includes, among other things, "enforceable emission limitations" geared toward minimizing air pollution within its borders. *Id.* at 502-03. The Court must read the citizen suit provision in harmony with the CAA's scheme of cooperative federalism. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007). Second, the present case and LUBA's pending appeal involve separate, albeit closely related, inquiries. Regardless of the future outcome of the LUBA appeal, Plaintiff states a valid claim that Defendant is currently violating the CAA. The U.S. Supreme Court instructs "where the complaint ... is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court ... must entertain the suit." *Bell v. Hood*, 327 U.S. 678, 681-82 (1946). Plaintiff's allegations clearly arise under federal law and, therefore, this Court must assume jurisdiction. In doing so, the Court assures Defendant that it will remain mindful of LUBA's jurisdiction and refrain from encroaching thereon.

## II. Plaintiff's CAA Claim is Ripe for Review.

Defendant contends that Plaintiff's claim is not ripe for adjudication. The ripeness doctrine is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)). "Ripeness is more than a mere procedural question; it is determinative of

jurisdiction." *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990). If Plaintiff's claim is not ripe — or, put differently, if it presents abstract legal issues — then it must be dismissed for lack of subject matter jurisdiction. *Id.*; *see also Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012) (a ripe claim presents concrete legal issues).

Federal courts have used the ripeness doctrine to dismiss challenges to land use decisions that have not yet been finalized. In *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, the U.S. Supreme Court found a regulatory takings claim unripe where the plaintiff had not "obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property." 473 U.S. 172, 186 (1985). In *Spring Spectrum L.P. v. City of Carmel, Indiana*, the Seventh Circuit affirmed the dismissal of a zoning challenge because the plaintiff had not "allow[ed] local authorities to act with finality before pursuing a claim in federal court." 361 F.3d 998, 1004 (7th Cir. 2004). Defendant asks the Court to follow the reasoning of these cases and dismiss the present action as premature. It argues the Court cannot determine whether the CAA has been violated until LUBA issues its final determination on Defendant's non-conforming use application.

The present case is distinguishable from *Williamson Cty. Reg'l Planning Comm'n* and *Spring Spectrum L.P.*. Plaintiff is not challenging a land use authority's decision or policy. Rather, it alleges a private actor is currently operating in violation of a federally enforceable CAA permit that incorporates local land use law. Plaintiff's claim is not contingent on the outcome of the pending LUBA appeal. Regardless of LUBA's future actions, Plaintiff alleges its constituents are presently injured by Defendant's noncompliance with land use law and its CAA permit. This is sufficient to satisfy the ripeness doctrine.

Defendant argues that this Court cannot accurately assess its compliance with the local laws referenced in its CAA permit without considering the equities built into Oregon's land use scheme. Jackson County's LDO contemplates that existing violations may be "remedied [on a post-hoc basis] as part of the development application." LDO 1.7.6. Oregon land use decision-makers allow technically unapproved uses to continue for equitable reasons where a land owner is actively seeking necessary approvals. *Leach et al. v. Lane County*, 45 Or LUBA 580, 597 (2003). Indeed, LUBA is allowing Defendant to continue operations while its application is on appeal. However, the state's decision to defer enforcement does not mean that there has been no violation. Nor does the fact the Defendant may remedy its situation at a later date detract from the ripeness of Plaintiff's claim for relief from current violations. Accordingly, the Court concludes that this action is ripe for review.

### III. Abstention Principles Do Not Weigh in Favor of a Stay or Dismissal.

Alternatively, Defendant urges the Court to abstain from hearing this case in deference to ongoing state proceedings. Ordinarily, a district court must hear all cases properly before it. *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 376 (9th Cir. 1982). "Abstention from the exercise of federal jurisdiction 'is the exception, not the rule.'" *Id.* (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976)). However, Defendant asserts that abstention is appropriate under both the *Burford* and *Colorado River* doctrines. The Court will consider the applicability of each in turn.

A. Abstention is Not Appropriate under the *Burford* Doctrine.

First, Defendant asserts that *Burford* counsels in favor of abstention. In *Burford v. Sun Oil Co.*, the Supreme Court allowed a district court to decline to exercise jurisdiction in order to

avoid confusing or disrupting a complicated state regulatory scheme. 319 U.S. 315, 334 (1943). Three factors must be present in order for *Burford* abstention to be appropriate:

> first, that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy.

*United States v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001) (quoting *Knudsen Corp.*, 676 F.2d at 377).

These essential factors are not met here. First and foremost, Congress has explicitly granted jurisdiction to federal district courts to hear CAA citizen enforcement actions. 42 U.S.C. § 7604(a). Plaintiff has not pled any claims that fall within a state body's jurisdiction. Indeed, *Burford* contemplates a different kind of suit than Plaintiff's present action. *Burford* involved an oil company's "attack [on] the validity of a permit that the [Texas Railroad] Commission had granted[.]" *Morros*, 268 F.3d at 704. It was a federal suit challenging the actions and policies of a state agency. Plaintiff is not challenging any state or local agencies' decisions or efforts. It is questioning the lawfulness of a private entity's conduct, which happens to be under review by LUBA. Neither Oregon DEQ, nor LUBA, are involved in the present suit. Nor are their decisions at issue. Both CAA cases cited by Defendant are inapposite for this reason. In *Sugarloaf Citizens Ass'n v. Montgomery Cty., Md.*, the Fourth Circuit dismissed a citizen enforcement action under *Burford* because it was essentially a "collateral attack of [a state agency's] permitting decisions." 33 F.3d 52, 1994 WL 447442, at *4 (4th Cir. 1994). In *Ellis v. Gallatin Steel Co.*, the Sixth Circuit declined to hear a party's claims that "boil[ed] down to allegations that [a] Kentucky agency" had misapplied its lawful authority when it issued a CAA permit. 390 F.3d 461, 481 (6th Cir. 2004). Dissimilarly, the Court does not find the present action to be a preemptive

challenge of state proceedings disguised as a citizen enforcement suit. Second, Plaintiff's federal CAA claim can easily be separated from related issues of state law. The question before the Court is whether Defendant is violating land use laws as incorporated into its CAA permit. This is a distinct from the state's inquiry into whether it should grant post-hoc approval of Defendant's nonconforming use. Third, Plaintiff is not asking the Court to review any state efforts. It is attempting to enforce a joint state and federal law against a CAA permitee. The Court can proceed forward without impeding on state policy. This is especially true given the CAA's model of cooperative federalism: state and federal governments share an interest in controlling air pollution. Accordingly, the Court finds the *Burford* doctrine inapplicable and declines to abstain under it.

B. Abstention is Not Appropriate under the *Colorado River* Doctrine.

Next, Defendant invokes the *Colorado River* abstention doctrine which allows a district court to dismiss a federal suit in favor of a concurrent state proceeding. *Colorado River Water Conservation Dist.*, 424 U.S. at 818. The doctrine applies in only "exceptional" circumstances. *Id.* Generally, the pendency of an action in state court will not bar a federal suit on the same matter. *Id.*

The Colorado River doctrine applies only when state and federal proceedings are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). A federal court can abstain only if it is fully confident that the concurrent state proceeding will resolve the case before it. *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). As discussed above, the Court is not assured that the pending LUBA appeal will effectively end Plaintiff's CAA litigation. The land use proceeding may, but is not certain to, cure the possibility of future CAA violations related to Defendant's nonconforming industrial use. However, it will

Page 10 – ORDER

...

not address Defendant's unpermitted activities in a floodplain. Nor is there any indication that it will address allegations that Defendant is violating the CAA now. The two proceedings involve similar facts but different legal issues. Because there is substantial doubt that the state court proceedings will sufficiently address Plaintiff's CAA claim, abstention is not appropriate. *Id.*

Since Defendant's request for *Colorado River* abstention fails on this threshold requirement, the Court need not proceed forward with the doctrine's factored analysis. *Id.* at 913, n.7. However, it is worth noting that it would be particularly inappropriate to abstain here since Plaintiff's claim is subject to exclusive federal jurisdiction. *Id.* "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 26 (1983). Plaintiff has not raised any state claims. Its single claim arises under a federal statute that clearly confers jurisdiction to this Court. Under these circumstances, *Colorado River* abstention is not warranted.

## ORDER

For the reasons set forth above, Defendant's Motion to Dismiss (#25) is DENIED. The Court will now proceed forward with Plaintiff's pending Motion for Preliminary Injunction (#6). Defendant's opposition is due by December 23, 2015. Plaintiff's reply brief is due by January 7, 2016. A hearing is scheduled for January 14, 2016 at 10 A.M.

It is so ORDERED and DATED this ___7___ day of December 2015.

MARK D. CLARKE
United States Magistrate Judge