David B. Paradis, OSB #853016
Mark R. Weaver, OSB #964530
BROPHY SCHMOR LLP
201 West Main, 5th Floor
P.O. Box 128
Medford, OR  97501
Phone: (541) 772-7123
Fax: (541) 772-7249
Emails: dparadis@brophylegal.com
        mweaver@brophylegal.com
Of Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DISTRICT

| | |
|---|---|
| ROGUE ADVOCATES, an Oregon nonprofit membership corporation,<br><br>                         Plaintiff,<br><br>       v.<br><br>MOUNTAIN VIEW PAVING, INC., an Oregon corporation,<br><br>                         Defendant. | Case No. 1:15-cv-01854-CL<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

## Table of Contents

I.    INTRODUCTION……………………………………………………    1

II.   STATEMENT OF FACTS……………………………………………    2

      A.    Origins of Mining and Batch Plant Operation………………………    2

      B.    Oregon Enacts Zoning Laws……………………………………...    3

      C.    The Mobile Home Park – Mountain View Estates…………………    3

      D.    Defendant Begins Operating on the Property…………………………    3

      E.    2012 Verification Proceeding………………………………………    4

      F.    The County Issues Citations and Enters Stipulated Order…………..    5

      G.    The Floodplain Development Permit…………………………………    6

      H.    The *Rogue I* Decision………………………………………………    6

      I.    Remand Proceedings and Jackson County Issues Code Enforcement
            Order………………………………………………………………...    7

      J.    The *Rogue II* Decision………………………………………………    7

      K.    The Nonconforming Use Remand Hearing…………………………    8

      L.    Plaintiff Files Suit in Jackson County Circuit Court………………..    8

      M.    Jackson County Issues New Citations………………………………    9

      N.    Defendant Applies for Approval of Alteration of Nonconforming
            Use………………………………………………………………...    9

      O.    DEQ Issues Warning Letter…………………………………………    9

      P.    60-Day Notice of Intent to Sue……………………………………...    10

      Q.    Jackson County Tentative Land Use Decision Regarding
            Alteration.............................................................................................    10

      R.    The Alteration Hearing and Decision……………………………….    10

      S.    County Violation Warnings – 9/24/15………………………………    11

T.    Plaintiff Files the Present Case…………………………………...    11

U.    Additional County Violation Warnings and DEQ Warnings………..    11

V.    Defendant Appeals the 9/24/15 Order Denying the Alteration and Obtains a Stay…………………………..………………………...    11

W.    LUBA's 2016 Decision…………………………………………...    13

X.    Defendant Ceases Operations……………………………………...    13

Y.    Jackson County Issues New Citations……………………………    13

Z.    The Court of Appeals' Decision………..………………………...    14

III.    DISCUSSION……………………………………………………    14

A.    Plaintiff's Claims………………………………………………    15

B.    Defendant Had Applicable Local Land Use Approvals At All Times And Was Not In Violation Of The CAA……………………………    16

C.    Federal Courts, Even Under The CAA, Lack Subject Matter Jurisdiction To Resolve Local Land Use Decisions………………...    19

D.    Plaintiff's Claims Are Moot…………………………………………    26

IV.    CONCLUSION………………………………………………………..    28

## Table of Authorities

**Cases:**

*Balistreri v. Pacifica Police Dep't,* 901 F.2d 696 (9th Cir. 1990)…………...…..   23

*Bergford v. Clackamas County,* 15 Or. App. 362 (1973)………………………..   16

*Buford v. Sun Oil Co.,* 319 U.S. 315 (1943)……………………………………..   25

*Center for Biological Diversity, Inc. v. BP America Production Co.,* 704 F.3d
    413 (5th Cir. 2013)………………………………………………………....   26

*City of Oregon City v. Mill-People Properties, Inc.,* 98 Or. App. 238 (1989)…..   20

*Coalition for Clean Air v. VWR Intern, LLC,* 992 F. Supp. 2d 1089 (E.D. Cal.
    2013)………………………………………………………….……………   25

*Eagle Creek Rock Products, Inc. v. Clackamas County,* 27 Or. App. 371
    (1976)………………………………………………………………………..   17

*Ellis v. Gallatin Steel Co.,* 390 F.3d 461 (6th Cir. 2004)…………………………   25

*The Flight Shop Inc. v. Leading Edge Aviation, Inc.,* 277 Or. App. 638
    (2016)……………………………………………………………………   21-23

*Forman v. Clatsop County,* 63 Or. App. 617 (1983)……………………………   17

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S.
    167 (2000)..……………………… ……………………………………   26

*Kopacz v. Hopkinsville Surface & Storm Water Util.,* 714 F. Supp. 2d 682
    (W.D. Ky. 2010)……..……………………………………………………   25

*Logan v. U.S. Bank Nat'l Ass'n,* 722 F.3d 1163 (9th Cir. 2013)…………………   26

*Mehring v. Arpke,* 65 Or. App. 747, 672 P.2d 382 (1983)………………………   22

*Meredith v. City of Lincoln City,* Civ. No. 03-6385-AA, 2008 WL 4937809 (D.
    Or. Nov. 6, 2008)……………………………………………………………   20

*MLC Auto., LLC v. Town of S. Pines,* 532 F.3d 269 (4th Cir. 2008)……………..   25

*Newport Fishermen's Wives, Inc. v. U.S. Coast Guard,* 2015 WL 1951751 (D.
    Or. 2015)…………………………………………………………….............   26

*Oregon Natural Resources Council, Inc. v. Grossarth,* 979 F.2d 1377 (9th Cir. 1992)…………………………………………………………………............ 26

*Polk County v. Martin,* 292 Or. 69 (1981)…………………………………………… 16-17

*Rogue Advocates v. Board of Commissioners of Jackson County,* 277 Or. App. 651 (2016)…………………….…………………………………………….. 3, 7, 8, 14, 16, 21, 23

*State ex rel. J.C. Reeves Corp. v. City of Portland,* 131 Or. App. 578 (1994)….. 20

*State ex rel. Moore v. City of Fairview,* 170 Or. App. 771 (2000)……………… 20

*Sugarloaf Citizen's Ass'n v. Montgomery Cnty., Md.,* 1994 WL 447442, 33 F.3d 52 (4th Cir. Aug. 17, 1994)…………………………………………….... 25

*United States v. Morros,* 268 F.3d 695 (9th Cir. 2001)…………………………... 25

*WildEarth Guardians v. Public Service Co. of Colorado,* 690 F.3d 1174 (10th Cir. 2012)………………………………………………….…………………... 27

*Zen-Noh Gran Corp. v. Consolidated Environmental Management, Inc.,* 2013 WL 3947186 (E.D.L.A. 2014)…….………………………………………... 27-28

**Statutes:**

Or. Rev. Stat. 197.015……………………………………………………………… 20

Or. Rev. Stat. 197.825……………………………………………………………… 20, 21, 22, 24

Or. Rev. Stat. 215.130……………………………………………………………… 16, 17

Or. Rev. Stat. 215.185……………………………………………………………… 22

42 U.S.C. §7431………………………………………………………………............ 23, 24

42 U.S.C. §7450………………………………………………………………............ 23

42 U.S.C. §7604………………………………………………………………............ 2, 15

**Rules:**

Fed. R. Civ. P. 56………………………………………………………………............ 1

**Other Authorities:**

Jackson County LDO Chap. 11……………………………………………….. 3

*Leach v. Lane County,* 45 Or. LUBA 580 (2003)……………………………….. 17

*Rogue Advocates v. Jackson County,* 2016 WL 453579 (Or. LUBA 2016)…….. 20

OAR 430-216-0060…………………………………………………………… 16

<u>LR 7.1(a) CERTIFICATION</u>

The undersigned certifies under LR 7.1(a) that the parties have conferred about the matters in this motion via telephone and were unable to resolve their disputes.

Pursuant to Fed. R. Civ. P. 56, defendant requests the dismissal of this suit on summary judgment because: (1) defendant was not in violation of the Clean Air Act; (2) whether defendant was in violation of the Clean Air Act hinges on the resolution of local land use issues, which is a matter subject to the exclusive jurisdiction of LUBA; and (3) this action is moot.

This motion is supported by the pleadings and papers on file herein, the Affidavit of Mark R. Weaver filed herewith, the Affidavit of Paul F. Meyer in Support of Defendant's Response to Motion to Compel filed contemporaneously herewith, and the Memorandum of Law set forth below.

**<u>Memorandum of Law</u>**

## I.    INTRODUCTION

Plaintiff alleges that defendant's use of an asphalt plant on its property violated the Clean Air Act ("CAA"). While the complaint refers to other structures on the property, the asphalt plant is the only structure on the property that requires an Air Contaminant Discharge Permit ("ACDP") and that is subject to the CAA. *See* Complaint ¶12.

Plaintiff does not allege that defendant is or has violated any emissions standards. Instead, plaintiff alleges that defendant is in violation of the CAA solely because it does

not have county zoning approvals, which represents a technical violation of defendant's DEQ permit requiring such approvals.

Whether defendant obtained necessary land use approvals is a matter committed to the exclusive jurisdiction of the County and the Oregon Land Use Board of Appeals ("LUBA"). Until LUBA issued its final ruling on January 11, 2016, defendant was operating its plant legally and with the approval of the County and LUBA. On January 11, 2016, defendant ceased operation of its asphalt plant at the site and defendant has since moved the plant.

Plaintiff has alleged a claim for injunctive relief, for a civil penalty[1], and for attorney fees. Defendant is entitled to the dismissal of this suit because: (1) it was not in violation of the CAA; (2) whether it was in violation of the CAA in this case involves a local land use decision, the resolution of which is a matter subject to the exclusive jurisdiction of LUBA; and (3) this matter is moot.

## II.    STATEMENT OF FACTS

### A.    Origins of Mining and Batch Plant Operation

In 1963, over 50 years ago, Howard DeYoung began mining and crushing rock and producing concrete on the subject property, located at 530 West Valley View in Jackson County, Oregon. (Ex. 2, p. 4). Mr. DeYoung used a concrete batch plant on the property. *Id.* At that time, this was a lawful use of said property because there were no zoning laws in effect. (Ex. 3, p. 3).

---

[1] This civil penalty is payable to the U.S. Treasury, not plaintiff. CAA §7604(g)(1),(d).

### B.     Oregon Enacts Zoning Laws

In 1973, Oregon enacted its zoning statutes. *Rogue Advocates v. Board of Commissioners of Jackson County*, 277 Or. App. 651, 653 (2016). Under those statutes, Jackson County began zoning land located in the county and placing restrictions on the use of land based upon how the land was zoned. *Id.* The initial 1973 (and current) zoning of the subject property did not allow for the use of the property for mining operations or a concrete batch plant; however, Jackson County Land Development Ordinance ("LDO") Chap. 11 provides that a use lawfully established before contrary zoning was enacted may continue as a lawful non-conforming use. (Exhibit 2, p. 6). Thus, mining and production of concrete using a batch plant on the subject property after 1973 was and is a lawful use categorized under the zoning code as a "nonconforming" use. *Id.*, pp. 6-14.

### C.     The Mobile Home Park – Mountain View Estates

In the 1980s, a mobile home park was constructed next to the mining and concrete plant on the subject property. (Ex. 28). The mobile home park is called Mountain View Estates and consists of a 164-unit mobile home retirement community. (Ex. 4, p.3).

### D.     Defendant Begins Operating on the Property

In 2001, defendant purchased the land from DeYoung and began operating an asphalt producing batch plant on the land where the concrete batch plant had been previously operated. (Ex. 2, p. 4). Defendant also continued to operate a rock crusher onsite. *Id.* Defendant's operation is small relative to other asphalt production plants in the Rogue Valley. (Ex. 8). Raw materials (rock) and recycled asphalt are delivered to the

property and temporarily stored in stock piles onsite.  (Ex. 2, p. 5). The rock is processed

through a rock crusher and screens located on the property. *Id.* The asphalt batch plant

was then used to manufacture asphalt from said rock. *Id.* The finished asphalt was then

used to pave public streets. *Id.* The asphalt batch plant operated in an almost identical

manner to the concrete batch plant. (Ex. 4, p. 13).

Commencing in 2001, from the startup of the plant, defendant secured annual

Oregon Department of Environmental Quality Air Quality Discharge permits for asphalt

batching and consistently reported both the volume of asphalt and the plant's discharge of

emissions to the DEQ. (Ex. 4, pp. 3-4). Defendant has always complied with DEQ

emission requirements. (Ex. 8).

### E.    2012 Verification Proceeding

Apparently, the mobile home park changed hands in 2011/2012 and is now owned

and operated by Christine Hudson. (Ex. 5, p. 2). After 10 years of operation without

significant complaints, the new owners of the mobile home park joined plaintiff Rogue

Advocates and started to raise complaints about defendant's operation. (Ex. 6). The DEQ

began monitoring the land use aspects of defendant's operation in August 2012. (Ex. 7).

In an email, the DEQ confirmed that, in 2012, "as the County views it currently, the

facility is allowed to operate and be placed at its current site." *Id.*

 Due to ongoing and constant disputes with plaintiff, in September 2012,

defendant voluntarily applied to the County for verification that its asphalt batch plant

was a nonconforming use, *i.e.*, "grandfathering" an existing land use since 1963 under

local and state land use laws because the use was in existence before those laws were enacted. (Ex. 3, p. 3). At the same time, defendant applied for floodplain development permits. *Id*.

On March 25, 2013, County planning staff determined that the asphalt batch plant qualified as a nonconforming use and staff approved the floodplain development permits. *Id.*, p. 4. Plaintiff appealed that decision to the county hearings officer. *Id.*

On September 26, 2013, the hearings officer found that the asphalt batch plant qualified as a nonconforming use and also found that the conversion of the prior concrete batch plant to an asphalt plant in 2001 did not require county approval. *Id*. In so holding, the hearings officer reasoned that concrete and asphalt batch plants are the same use (Ex. 4, p. 13); however, the hearings officer found that other structures (such as sheds and a shop) constructed after 2001 were unauthorized expansions of the nonconforming use, and because defendant did not seek county approval for those unauthorized expansions he could not grant their nonconforming use verification. *Id.*, p. 18. The hearings officer also vacated the floodplain development permits that had been approved by planning staff. (Ex. 3, p. 4). Plaintiff filed an appeal of this decision with LUBA on October 17, 2013. This LUBA proceeding is referred to herein as *Rogue I*. *Id.*

## F. The County Issues Citations and Enters Stipulated Order

Following the hearings officer's decision, on October 15, 2013, the County initially cited defendant for floodplain and building permit violations. (Ex. 10). The County and defendant entered into a Stipulated Order whereby defendant was allowed to

continue to operate the asphalt batch plant as a legal nonconforming use while defendant proceeded through the land use process. (Ex. 11, p. 1).

### G.    The Floodplain Development Permit

On October 25, 2013, defendant submitted an application for a floodplain development permit. On January 23, 2014, the planning department approved the application with a Type I review, which involves no public hearing or right for others to participate. (Ex. 3, p. 6). On February 13, 2014, plaintiff appealed the County's decision. *Id.* This LUBA proceeding is referred to herein as *Rogue II*.

### H.    The *Rogue I* Decision

LUBA issued the *Rogue I* decision on April 22, 2014. (Ex. 2). In that decision, LUBA agreed in part with the hearings officer's decision, finding that the concrete batch plant was: (1) "lawfully established"; (2) satisfied state and local requirements for continued, uninterrupted existence; and (3) did not have to be approved as an "[e]xpansion of nonconforming aggregate and mining operations." (Ex. 2, p. 14, 24; Ex. 12, p.1). LUBA specifically rejected plaintiff's challenges to these aspects of the hearings officer's decision. This established that defendant did not require a land use permit to operate a batch plant.

LUBA also determined that the nature of the verified nonconforming use was a *concrete* batch plant and that "the 2001 installation of defendant's asphalt batch plant is lawful only if it qualifies and is approved as an alteration of the nonconforming concrete batch plant." (*Id.;* Ex. 2, p. 18). LUBA found that the hearings officer had not adequately

described the nature and extent of the nonconforming *concrete* batch plant use. Accordingly, LUBA remanded, "for the Hearings Officer to verify the nature and extent of the lawful nonconforming batch plant use, without considering as part of the verified use any unapproved alterations that occurred in 2001 [*i.e.*, conversion to an asphalt batch plant] or at other relevant times since 1992." (Ex. 2, p. 22).

## I. Remand Proceedings and Jackson County Issues Code Enforcement Order

In response to LUBA's decision in *Rogue I*, defendant initiated remand proceedings with the County on July 31, 2014, to establish the scope of the nonconforming use. (Ex. 12; *Rogue Advocates*, 277 Or. App. at 657).

At the same time, a County hearings officer again confirmed that defendant was allowed to operate the batch plant while it was proceeding through the land use process and pending the outcome of the remand proceedings. (Ex. 11, p. 3). The County did not appeal this order.

## J. The *Rogue II* Decision

On August 26, 2014, LUBA issued its decision in *Rogue II.* This LUBA appeal involved defendant's second floodplain permit, which had been granted by the County so as to allow certain structures on the property. LUBA determined that a floodplain development permit could not be issued until after the County had completed the remand. (Ex. 3, p. 9).

**K.      The Nonconforming Use Remand Hearing**

Pursuant to LUBA's decision in *Rogue I* and defendant's request for remand proceedings, the County hearings officer conducted a remand hearing on August 25, 2014, to determine the scope of the nonconforming use established by the concrete batch plant. The parties both made submittals during the hearing process. (Ex. 12, p. 2). The hearings officer determined that defendant needed to file an application with the County for an alteration of a nonconforming use because of the conversion of the batch plant from concrete to asphalt in 2001. *Id.*, p. 5-8. This order was issued on October 28, 2014. *Id.* Plaintiff also appealed this decision. (Ex. 13, p. 2). That LUBA proceeding is referred to herein as *Rogue III*.

**L.      Plaintiff Files Suit in Jackson County Circuit Court**

On September 12, 2014, plaintiff (along with Christine Hudson) filed a lawsuit against Jackson County and defendant in Jackson County Circuit Court. (Case No. 14CV11829). (Ex. 5). The plaintiffs filed the suit to challenge Jackson County's decision that defendant could continue to operate the batch plant while it was proceeding through the county land use process. *Id.*, p. 11, ¶27. The Circuit Court dismissed the suit on October 13, 2014, because it determined that it lacked standing to interfere in the land use process, which was solely within the jurisdiction of LUBA. (Ex. 14). Plaintiff appealed this decision to the Oregon Court of Appeals, who recently affirmed. *Rogue Advocates*, 277 Or. App. at 657.

**M.    Jackson County Issues New Citations**

On November 3, 2014, following the hearings officer's decision in the remand proceedings (which was issued on October, 28, 2014), the County issued defendant code violations for: (1) having a building without an electrical permit; (2) establishing an asphalt batch plant without requesting an alteration permit; and (3) developing in the floodplain without required approval. (Ex. 15).

The hearing on the new citations took place on December 9, 2014. (Ex. 13). The hearings officer issued an order on December 30, 2014. *Id.*, p. 4. He determined that, pursuant to the remand order, defendant was operating the asphalt plant without required permits from the County. The hearings officer was "sensitive to the fact that defendants appear to be taking necessary and appropriate measures to resolve these matters" and he also felt that defendant "will probably be successful in obtaining nonconforming land use approvals, at least to some extent." *Id.*, p. 3. The order issued a fine to defendant but suspended most of the fine provided that defendant filed an application for an alteration within 30 days. *Id.*

**N.    Defendant Applies for Approval of Alteration of Nonconforming Use**

As required by the remand order and the County, on January 29, 2015, defendant applied for approval of an alteration to a nonconforming use. (Ex. 1, p. 1).

**O.    DEQ Issues Warning Letter**

On January 30, 2015, the Oregon Department of Environmental Quality issued a letter to defendant. The DEQ had been in communication with the County and

determined that defendant was in violation of DEQ requirements because it was not in compliance with county zoning laws. (Ex. 16). The DEQ demanded that defendant, by March 3, 2015: (1) provide documentation that the county had granted land use approval for the asphalt plant; (2) relocate the facility; or (3) cease operations until such time a land use approval is granted. The DEQ deadline to obtain approval or cease operations was apparently extended to March 20, 2015. (Ex. 17).

### P.      60-Day Notice of Intent to Sue

On February 18, 2015, plaintiff sent defendant a 60-day notice of intent to sue. (Am. Comp. ¶4).

### Q.      Jackson County Tentative Land Use Decision Regarding Alteration

On March 19, 2015, the County issued a staff decision approving defendant's alteration of the concrete batch plant to the asphalt batch plant as a nonconforming use. (Ex. 18). Plaintiff appealed this decision on March 31, 2015, and the matter went before a hearings officer. (Ex. 1, p. 1).

### R.      The Alteration Hearing and Decision

A County hearings officer conducted a hearing on defendant's alteration application on June 1, 2015. (Ex. 1). The hearings officer issued an opinion on September 24, 2015. He determined that the asphalt batch plant did not pose a risk to neighboring residents' health, but it posed a greater risk of fire and explosion than a concrete batch plant. (*Id.*; Ex. 19, p. 4). He also determined that the asphalt batch plant had more

employees and operated more regularly during the year. *Id.* For these reasons, defendant's alteration application was denied.

### S.      County Violation Warnings – 9/24/15

On the same day that the hearings officer issued his opinion on the alteration, the County advised defendant that it would impose a fine of $200 per day for any continued violations. (Ex. 20).

### T.      Plaintiff Files the Present Case

On September 30, 2015, plaintiff filed the present complaint for declaratory and injunctive relief and civil penalties, despite the preceding history of defendant working closely with the County and the DEQ.

### U.      Additional County Violation Warnings and DEQ Warnings

The County issued another warning violation on 10/6/15. (Ex. 21). On October 7, 2015, the DEQ issued a letter to defendant stating that defendant was in violation of environmental laws based upon the hearings officer's September 24, 2015, order denying the application for an alteration. The DEQ advised defendant that if it continued to operate after October 31, 2015, it would begin a formal enforcement action against defendant. (Ex. 22).

### V.      Defendant Appeals the 9/24/15 Order Denying the Alteration and Obtains a Stay

On October 13, 2015, facing immediate and imminent enforcement action from the County and the DEQ, defendant appealed the decision denying the alteration to LUBA and moved for a stay of that decision. (Exhibit 23). In its motion for stay,

defendant argued that the record did not contain substantial evidence that the asphalt batch plant poses any risk of fire and explosion greater than the risk presented by a concrete batch plant. Defendant also argued that there was no immediate and serious threat to public safety from the continued operation of the asphalt batch plant. Plaintiff intervened in the appeal and opposed the motion for stay. (Exhibit 24). On October 20, 2015, LUBA rejected plaintiff's arguments and granted a stay of the alteration decision. (Exhibit 25).

LUBA summarized the record as it related to defendant's approvals to operate its plant, noting that that following its "April 22, 2014 decision * * * the county allowed petitioners [defendants] to continue operating the asphalt batch plant, while seeking approval of a nonconforming use alteration, which was granted by planning staff on March 19, 2015. Only when the hearings officer overruled planning staff and denied that application on September 24, 2015, did the county begin imposing an $800 per day fine until the batch plant ceases to operate on the property." *Id.*, p. 8.

LUBA concluded that forcing defendant to cease the batch plant operations would cause irreparable harm, and it ordered that defendant could continue operating the plant during the pendency of the appeal by suspending the September 24, 2015, decision. With that understanding, the County and DEQ decided to stay enforcement actions during the pendency of the LUBA appeal because LUBA had authorized defendant to continue to operate. (Ex. 26, ¶12).

### W.   LUBA's 2016 Decision

On January 11, 2016, LUBA issued its final opinion and order regarding the hearings officer's order of September 24, 2015. The appeal involved verifying the nature and extent of the concrete batch plant to determine whether the conversion to an asphalt batch plant was "no more intensive" and would "have no greater impact on the surrounding neighborhood" than the concrete plant. (Ex. 19, p. 4). LUBA found no basis for reversing the hearings officer's decision that: (1) the asphalt plant had more employees than the concrete plant; (2) it operated more frequently; and (3) there was an increased risk of explosion with the asphalt plant. *Id.*, p. 7.

With respect to the risk of explosion, LUBA stated that "there is conflicting believable evidence regarding whether petitioners' asphalt batch plant poses a greater risk of adverse impact than the previous concrete batch plaint, due to an increased risk of explosion." *Id.*, p. 31. Under its standard of review, LUBA could not reweigh the conflicting evidence. *Id.*

### X.   Defendant Ceases Operations

Defendant has not operated the asphalt batch plant on site since LUBA issued its decision on January 11, 2016. (Ex. 26, ¶12).

### Y.   Jackson County Issues New Citations

On January 21, 2016, the County re-issued its citation from September 24, 2015. *Id.* A hearing was held on March 15, 2016, and the County issued an order on March 18, 2016. (Ex. 26).

As it related to the asphalt batch plant, the County determined that defendant was in violation for operating the plant for a total of 26 days from September 25, 2015, until LUBA's stay on October 21, 2015, although recognizing that defendants [Paul and Kristen Meyer] were "diligently pursuing various land use approvals that will likely resolve most of these violations" and that "defendants have diligently pursued various land use applications over a number of years." The County fined defendant $5,200 for the asphalt plant operation. (*Id.*, p. 16). In order to avoid further cost, defendant did not appeal this decision.

### Z.    The Court of Appeals Decision

The Court of Appeals issued its ruling in *Rogue Advocates v. Board of Commissioners of Jackson County* on April 20, 2015. This case related to the dismissal of plaintiff's suit against defendant and the County in which plaintiff sought a civil penalty against defendant and an injunction to stop defendant's operation of the batch plant. 277 Or. App. at 593. The Court of Appeals found that the Jackson County Circuit Court lacked subject matter jurisdiction because land use issues were pending before the county and LUBA. *Id.* Plaintiff has submitted a Petition for Review with the Oregon Supreme Court.

## III.    DISCUSSION

Defendant had the approval of the County and LUBA, under Oregon land use laws, to operate the asphalt batch plant while it pursued land use approval in Jackson County. This right existed until LUBA issued its decision on January 11, 2016. Until that

time, plaintiff had no cause of action against defendant under the CAA. Since that time, defendant has ceased operating the asphalt batch plant, and no cause of action would exist under the CAA.

Plaintiff's vexatious litigation in this case (which continues even after the asphalt plant has been moved) has not accomplished anything. At all times defendant was working with the County to obtain necessary approvals and permits. Plaintiff intervened and appealed at every stage. In the end, when the County refused to approve zoning for the plant, defendant moved the plant, not because of plaintiff's actions but based on County and LUBA decisions.

## A.    Plaintiff's Claims

Plaintiff has filed suit against defendant not based upon air emission violations, but instead based upon a land use condition in its CAA permit. Plaintiff's suit is based upon a section of the CAA that allows private individuals to commence a suit against another person "who is alleged to have violated * * * or to be in violation of * * * "an emission standard or limitation." 42 U.S.C. §7604(a)(1). According to plaintiff, "emission standard or limitation" is defined broadly to include "any permit term or condition."

Plaintiff concedes that defendant was issued a permit to operate the asphalt plant pursuant to a General Air Contaminant Discharge Permit issued by the Oregon Department of Environmental Quality ("DEQ"). (Complaint, ¶17). Condition 1.4 of defendant's CAA permit provides:

> "This permit is not valid * * * at any location where the operation of the permitee's process, activities, and insignificant activities <u>would be in violation of any local land use or zoning laws</u>. * * * It is the permitee's sole responsibility to <u>obtain local land use approvals</u> as, or where, applicable before operating this facility at any location."

(Complaint, Ex. B, p. 2; *emphasis added*). According to the permit, defendant is allowed to operate its asphalt plant as long as it has "local land use approvals * * * where applicable" to operate. The permit also incorporates OAR 430-216-0060 (4), which provides that the DEQ may rescind a permit, upon 60 days' notice of intent to rescind, if the permitee is not in compliance with the permit. (*See*, Complaint, Ex. B, p. 10, Permit Condition 10.9). Thus, according to its permit, if defendant were found to lack "local land use approvals," it would have 60 days to obtain such approvals before its permit would be rescinded.

## B.    Defendant Had Applicable Local Land Use Approvals At All Times And Was Not In Violation Of The CAA

Defendant began its operation of the asphalt plant in 2001 as an existing "nonconforming use," which in Oregon is a use of property that existed prior to the enactment of zoning regulations. Or. Rev. Stat. 215.130(5); *Rogue Advocates*, 277 Or. App. at 654. Oregon law allows a landowner to continue an existing nonconforming use because the retroactive application of zoning regulations constitutes a taking of property. *Id.* ("The lawful use of any * * * land at the time of the enactment * * * of any zoning ordinance or regulation <u>may be continued</u>;") *Bergford v. Clackamas County*, 15 Or. App. 362, 367 (1973). Courts refer to a nonconforming use as a "vested right," which is

considered a property right. *Polk County v. Martin*, 292 Or. 69, 74 (1981); *Eagle Creek Rock Products, Inc. v. Clackamas County*, 27 Or. App. 371, 374, *overruled on other grounds by Forman v. Clatsop County*, 63 Or. App. 617 (1983).

Because a nonconforming use constitutes a vested property right, a landowner is not obligated to seek approval, but a landowner may voluntarily apply for a verification of a nonconforming use or may seek a verification under threat of enforcement. *Leach v. Lane County*, 45 Or. LUBA 580, 597 (2003).

Under Or. Rev. Stat. 215.130(9), a landowner may alter a nonconforming use without losing the right to continue the use as long as the alteration does not result in a "greater adverse impact." As explained by LUBA in *Leach*, equitable principles allow for the post-hoc approval of alterations to a nonconforming use: "it is often difficult to distinguish between an expansion, which requires county review and approval, and independent portions of the underlying nonconforming use." 45 Or. LUBA at 597. Because of these difficulties, landowners should not be penalized for seeking verification of non-conforming uses or for seeking "post-hoc approval of expansions created by previous owners." *Id.*

In 2012, defendant voluntarily applied to the County for verification that its use of its batch plant was a legal nonconforming use. (Ex. 27, p. 2). In August 2012, the DEQ consulted with the County concerning defendant's operation. The DEQ confirmed that "as the County views it currently, the facility **is allowed** [to] operate and be placed at its current site. * * * Hence, until the Department (DEQ) hears otherwise, the County has

determined that the land-use, for this plant to operate at this location, is currently allowed." (Ex. 7).

Jackson County staff approved the nonconforming use application on March 25, 2013. (Ex. 27, p. 2). In September 2013, a hearings officer determined that "the batch plant use is a lawfully established nonconforming use." (Ex. 9, p. 21).[2] On October 18, 2013, the County signed a stipulated order that allowed defendant "to continue to engage in nonconforming uses while they proceeded through the County's land use process." (*See*, Ex. 11, p. 2). This understanding was again confirmed by the County on August 18, 2014. *Id.*

Based upon the County's approvals, defendant continued its operations while it proceeded through the land use process despite ongoing delays created by plaintiff.

On December 30, 2014, a County hearings officer advised defendant that it had 30 days to apply for an alteration of a nonconforming use in order to continue to operate its batch plant. (Ex. 13). Defendant submitted its application for an alteration in January 2015, within the 30-day period.

The DEQ issued a Warning Letter to defendant on January 30, 2015. The letter advised defendant that, by March 20, 2015, defendant had to provide documentation that the County had approved its land use application or discontinue the use of or move the batch plant.

---

[2] The hearings officer determined that structures built on the property were not a proper expansion of the use. (Ex. 9, p. 21).

Before this deadline, on March 19, 2014, the County approved defendant's alteration application. (Ex. 18). Although this County decision was later reversed by a hearings officer in September 2015, LUBA suspended the September 2015 order and determined that defendant should be allowed to continue to operate its batch plant until LUBA reached a final decision. (Ex. 24). That LUBA decision came on January 11, 2016, and defendant has not operated the batch plant on site since then.

As the foregoing demonstrates, defendant had "approval" from the County and LUBA to operate its batch plant through January 11, 2016. Accordingly, defendant was in compliance with Condition 1.4 of its permit, and it was at no time in violation of the CAA. As a matter of law, defendant is entitled to judgment in its favor, dismissing this case.

### C.   Federal Courts, Even Under The CAA, Lack Subject Matter Jurisdiction To Resolve Local Land Use Decisions

In essence, plaintiff's suit seeks to second guess the County and LUBA's repeated "approvals" of defendant's use of the batch plant while the land use matter was being resolved. Plaintiff challenged each of the decisions referred to above, and it now asks this Court to rule, in effect, that the County and LUBA should not have given defendant continued approval to operate the plant. This is after plaintiff unsuccessfully attempted to have the Jackson County Circuit Court do the same. The Jackson County Circuit Court ruled, as this Court should, that it lacked subject matter jurisdiction to review these matters.

This is because in Oregon LUBA has exclusive jurisdiction over land use decisions. *Rogue Advocates v. Jackson County*, 2016 WL 453579 (Or. LUBA 2016) ("local government decisions regarding vested rights and nonconforming uses are land use decisions subject to LUBA's exclusive jurisdiction."). Or. Rev. Stat. 197.825(1) provides that LUBA "shall have exclusive jurisdiction to review any land use decision or limited land use decision[3] of a local government."[4] Oregon courts have interpreted this statute to provide that, for land use decisions, "the exclusive avenue of review is to LUBA * * * [.] ORS 197.825(4)(a) [predecessor to ORS 19.825(3)(a)] does not establish circuit court jurisdiction to render a second decision on the same subject, in the guise of enforcement." *City of Oregon City v. Mill-People Properties, Inc.*, 98 Or. App. 238, 242 (1989); *see also, Meredith v. City of Lincoln City*, Civ. No. 03-6385-AA, 2008 WL 4937809 (D. Or. Nov. 6, 2008) (recognizing that LUBA has exclusive jurisdiction to review local land use ruling regarding billboard modification even though First Amendment is implicated); *State ex rel. Moore v. City of Fairview*, 170 Or. App. 771, 777 (2000) (reversing circuit court's decision regarding subdivision approval due to lack of jurisdiction over land use matters that "were or could have been resolved through the local or LUBA process"); *State ex rel. J.C. Reeves Corp. v. City of Portland*, 131 Or. App. 578, 581 (1994) (affirming jurisdictional dismissal of mandamus action relating to challenge of subdivision approval condition).

---

[3] "Land use decision" is defined to include local government decisions that apply land use regulations, including zoning ordinances. Or. Rev. Stat. 197.015(10), (11).

[4] This statute has limited exceptions that are not applicable in this case.

This issue was recently explained by the Oregon Court of Appeals <u>in this very</u> <u>case</u> in *Rogue Advocates*, 277 Or. App. at 651. As discussed above, plaintiff originally filed suit against defendant in Jackson County Circuit Court, seeking to halt defendant's operation while defendant worked its way through the land use process. *Id.* at 657. Again, during this time the County, the DEQ, and LUBA allowed defendant to continue operating its batch plant. Dissatisfied, plaintiff filed suit in Circuit Court seeking an injunction. *Id.* at 658. Plaintiff also sought to establish that the County was failing to enforce its own land use regulations. *Id.* The Circuit Court dismissed the case for lack of subject matter jurisdiction.

The Court of Appeals affirmed this decision. It first found that pursuant to Or. Rev. Stat. 197.825 LUBA has "exclusive jurisdiction" to review county land use decisions whether the matter is on appeal with LUBA or whether a LUBA appeal is "prospectively available." *Id.* at 659. While circuit courts have jurisdiction to enforce regulations and LUBA orders, "a party may not * * * ask a circuit court to disrupt the land use decision process by asking the court to make a land use decision 'under the guise of a circuit court enforcement proceeding.' " *Id.* [citations omitted].

At the same time the Court of Appeals decided *Rogue Advocates*, it also decided *The Flight Shop Inc. v. Leading Edge Aviation, Inc.*, 277 Or. App. 638 (2016). In that case, the county had approved a site plan and the plaintiff appealed that decision to LUBA. LUBA remanded the matter for further proceedings. Before those proceedings were complete, the plaintiff filed suit for injunctive relief and statutory fines based upon

Or. Rev. Stat. 215.185, which, like the CAA, allows a private person to bring an enforcement action. The court held that because the land use decisional process was still ongoing the circuit court lacked jurisdiction. *Id.* at 640.

The court first noted that Or. Rev. Stat. 197.825 divides jurisdiction over land use matters between LUBA and the courts:

> "The jurisdictional line between the circuit courts and LUBA is a line between land use enforcement, on one hand, and land use decision-making and administrative review, on the other hand. It is a line better expressed through examples. A party may bring an enforcement action in circuit court when a violator engages in a land use contrary to a zoning ordinance and that violator 'has filed no application to allow that use or have it declared permissible through a land use decision.' * * * However when a developer begins a project pursuant to a site plan approval with which neighbors disagree, then the only forum for the neighbors' challenge to that approval would be LUBA. The circuit court would not have jurisdiction even if the project seemed to be improperly approved. *See e.g.*, *Mehring v. Arpke*, 65 Or. App. 747, 672 P.2d 382 (1983), *rev den.* * * * (dismissing private enforcement action where site plan approved consistent with prior development approval and despite subsequent zone change.)"

*Flight Shop* at 640. The court held that a court's jurisdiction is very limited in nature, while LUBA's jurisdiction is very broad. This is because "LUBA's exclusive jurisdiction over the review of land use decisions is central to Oregon's 'comprehensive system for reviewing land use decisions.' " *Id.* at 644 [citations omitted]. The court noted:

> "It matters little whether a land use decision is on its way up on appeal to LUBA or on its way down after remand from LUBA for further local proceedings, because there is no circuit court jurisdiction over what may again be a matter for LUBA review."

*Id.* at 645. The court found that claims for injunctive relief and for penalties were not proper because the matter was still being processed by the County and LUBA. *Id.* at 647.

The CAA operates no differently. It specifically reserves to local bodies, such as LUBA, exclusive jurisdiction to resolve land use matters. Section 7431 of the CAA specifically provides:

> "Nothing in this Act constitutes an infringement on the existing authority of counties and cities to plan or control land use, and nothing in this Act provides or transfers authority over such land use."

42 U.S.C. §7450.

This section in the CAA specifically preserves the jurisdictional line between court involvement and local land use decision-making established in *The Flight Shop* above.

Early on, this Court ruled that it could retain jurisdiction under the CAA (DKT #30), although it cautioned that it would "remain mindful of LUBA's jurisdiction and refrain from encroaching thereon; however, at the time of that decision the Court was resolving a motion to dismiss and could only consider the facts and allegations in the complaint. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). The Court was not presented with the same procedural facts described above, and the Court of Appeals had not issued its decisions in *Rogue Advocates* and *The Flight Shop.* The Court was also not advised of 42 U.S.C. §7431 specifically preserving local land use authority.

In its decision, this Court felt that jurisdiction could exist because the issues involved in the LUBA appeal and those presented by plaintiff in its complaint involved separate inquiries. The Court felt that plaintiff's case could progress "regardless of the future outcome of the LUBA appeal." *Id.* at * 4. As demonstrated by the undisputed facts set forth above, which were not comprehensively presented as part of the motion to dismiss, the <u>sole</u> dispositive issue in both the County and LUBA proceedings and in plaintiff's case before this Court is whether defendant had local zoning approval to operate its plant.

Plaintiff's case is based entirely on Condition 1.4 of defendant's CAA permit, and, more particularly, that section of the permit that provides that defendant must at all times have "local land use approvals" to operate. (Complaint, Ex. B, p.2). The issue to be resolved in this case therefore is whether or not defendant had "local land use approvals" to operate. During the course of the LUBA proceedings, both the County and LUBA granted defendant "local land use approvals" to operate. For this Court to find any CAA liability, it would have to overrule both the County and LUBA's decisions granting these "approvals." While plaintiff may disagree with the County and LUBA's decisions to allow defendant to operate the plant while the land use process was proceeding, courts lack jurisdiction to interfere with or overrule these decisions. 42 U.S.C. §7431; Or. Rev. Stat. 197.825.

Even if this Court had jurisdiction in this case, it should abstain from deciding any CAA claims because any decision would disrupt Oregon's system to promulgate uniform

land use policy. *Buford v. Sun Oil Co.*, 319 U.S. 315 (1943); *United States v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 282 (4th Cir. 2008) (abstention appropriate where federal claims stem solely from construction of state or local land use or zoning law); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461 (6th Cir. 2004) (same); *Sugarloaf Citizen's Ass'n v. Montgomery Cnty., Md.*, 1994 WL 447442, 33 F.3d 52 (4th Cir. Aug. 17, 1994) (unpublished opinion).

In addition, abstention would be appropriate because plaintiff's CAA action is a parallel proceeding concerning the same issue which has been resolved by the County and LUBA. *Kopacz v. Hopkinsville Surface & Storm Water Util.*, 714 F. Supp. 2d 682, 687 (W.D. Ky. 2010) (court properly abstained from deciding CAA claims which turned on resolution of state regulatory issues being addressed in pending state litigation); *Coalition for Clean Air v. VWR Intern, LLC*, 922 F. Supp. 2d 1089, 111 (E.D. Cal. 2013) (CAA abstention proper where it involved interpretation of local regulation at issue in pending state action).

While this Court could have jurisdiction if defendant ignored LUBA's final decision issued on January 11, 2016, it is undisputed that defendant did not operate its plant at the site after that date. Plaintiff's CAA claim should be dismissed for lack of jurisdiction because it merely seeks to overrule County and LUBA decisions allowing defendant to operate its plant.

**D.      Plaintiff's Claims Are Moot**

Even if this Court had jurisdiction and found defendant in violation of the CAA, plaintiff's claims are moot because it is undisputed that defendant has moved its plant based upon LUBA's order of January 11, 2015. "Article III of the Constitution limits federal courts to the adjudication of actual, ongoing cases or controversies between litigants. If a 'live' controversy ceases to exist because of changed circumstances after the complaint is filed, the claim is moot and no longer justiciable." *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1166 (9th Cir. 2013).

One exception to the mootness doctrine, which plaintiff may allege, is that the "voluntary cessation" of conduct does not render a case moot unless the defendant can show that there is no reasonable expectation of a recurrence of the alleged violation. *See e.g . Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000) (citizen suit for civil penalties may be rendered moot where defendant voluntarily complies with Act and "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.")

However, this exception does not apply where there is no "voluntary cessation," such as where the conduct stopped as a result of a successful administrative appeal. *Oregon Natural Resources Council, Inc. v. Grossarth*, 979 F.2d 1377, 1379 (9th Cir. 1992); *Newport Fishermen's Wives, Inc. v. U.S. Coast Guard*, 2015 WL 1951751 (D. Or. 2015); *Center for Biological Diversity, Inc., v. BP America Production Co.*, 704 F.3d 413, 425 (5th Cir. 2013).

In *WildEarth Guardians v. Public Service Co. of Colorado*, 690 F.3d 1174 (10th Cir. 2012), the defendant began construction of a plant at a time that the law was somewhat unclear regarding whether the CAA required an MACT determination as part of obtaining a construction permit. The defendant's construction permit did not have an MACT determination. After the defendant began construction, the EPA issued a ruling requiring an MACT determination. *Id.* at 1180. The EPA determined that the defendant needed to obtain an MACT determination but that it could continue construction while attempting to obtain one. *Id.* The plaintiff then filed suit seeking injunctive relief to halt construction and seeking to recover civil penalties under the CAA. *Id.* at 1181. After construction, the defendant obtained the MACT determination. *Id.*

The court granted the defendant's motion to dismiss, finding that the case was moot and dismissing the claims for injunctive relief and for a civil penalty. A central aspect of this decision was that the defendant's decision to continue construction without the MACT determination was authorized by the government and also that the defendant continued to work with state and federal authorities to come into compliance. *Id.* at 1186-87.

The same analysis should apply in this case, where both Jackson County and LUBA allowed defendant to continue its operation (which is not alleged to have been causing any air contamination) while it worked its way through the land use process. As in *WildEarth*, the continuation of this suit "can serve no cognizable deterrent purpose." *Id.* at 1190. *See also*, *Zen-Noh Gran Corp. v. Consolidated Environmental Management,*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

*Inc.*, 2013 WL 3947186 (E.D.L.A. 2014) (mootness invalidated claims for civil penalty where defendant worked at all times with state to obtain permits).

## IV.    CONCLUSION

For the reasons set forth above, defendant requests the dismissal of plaintiff's claims because: (1) it did not violate the Clean Air Act; (2) any finding that it did is outside this Court's jurisdiction; and (3) plaintiff's claims are moot.

DATED: July 29, 2016.                       Respectfully submitted,

                                            /s/ David B. Paradis
                                            David B. Paradis, OSB #853016
                                            Mark R. Weaver, OSB #964530
                                            BROPHY SCHMOR LLP
                                            Emails: dparadis@brophylegal.com
                                                        mweaver@brophylegal.com
                                            Of Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word count limitation under LR 7-2(b) because it contains 6,925 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.


DATED: July 29, 2016.                    /s/ David B. Paradis
                                         David B. Paradis, OSB #853016
                                         Mark R. Weaver, OSB #964530
                                         BROPHY SCHMOR LLP
                                         Emails: dparadis@brophylegal.com
                                                 mweaver@brophylegal.com
                                         Of Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing **Defendant's Motion for Summary Judgment** upon the following parties:

Maura C. Fahey, maura@crag.org
Christopher Winter, chris@crag.org
Crag Law Center
917 SW Oak St., Ste. 417
Portland, OR 97205
Fax: (503) 296-5454
    Attorneys for Plaintiff

_____    by **mailing** it in a sealed envelope, with postage paid, addressed to each said party at the address set forth above on the date set forth below.

_____    by **personally handing** it to said attorney(s) on the date set forth below.

_____    by **emailing** it to said attorney(s) during normal office hours, addressed to said attorney(s) at their last known email address as indicated above.

_____    by **faxing** it to said attorney(s) during normal office hours, addressed to said attorney(s) at their last known facsimile number as indicated above.

  X      via the Court's **CM/ECF** electronic service system, on the date set forth below.


DATED: July 29, 2016.                    /s/ David B. Paradis
                                         David B. Paradis, OSB #853016
                                         Mark R. Weaver, OSB #964530
                                         BROPHY SCHMOR LLP
                                         Emails: dparadis@brophylegal.com
                                                 mweaver@brophylegal.com
                                         Of Attorneys for Defendant